## Louisville & Nashville Railroad Company v. Taylor's Administratrix.

(Decided April 30, 1914.)

### Appeal from Oldham Circuit Court.

1. Master and Servant—Injuries—Actions—Instructions.— In an action for the death of a section hand sent by his foreman to flag trains coming south on a track which was being repaired and temporarily not in use, the court instructed the jury that a train which passes up the track following the flagman should

keep a lookout. Held, proper instruction. While it is true that as to flagmen no lookout duty is owed, even though such duty may be owed to others, yet, in operating a train over a track which has been temporarily withdrawn from service with notice to a flagman, in a place where a lookout duty is owed to others, a train owes a lookout duty to flagmen also, unless there has been notice to such flagman or until an ordinarily prudent person might reasonably have expected traffic to be resumed on said track.

2.  Negligence—Presumptions.—Negligence is not to be presumed, but it may be inferred. And when the question is one of negligence or no negligence, and. the evidence is equally consistent with either view, the court should not submit the case to the jury. But where all the facts point to but one conclusion, there is no such equilibrium of evidence as to bring the case within the rule stated.

BENJAMIN D. WARFIELD, D. H. FRENCH for appellant.

ROBERT T. CROWE for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Affirming.

This is an appeal from a judgment of the Oldham Circuit Court in favor of appellee, John T. Taylor's administratrix, against the Louisville & Nashville Railroad Company, for twenty-five hundred dollars, damages for the death of appellee's husband, a colored section hand, who was run over and killed by one of appellant's trains in the yards at Lagrange.

There are in these yards, two parallel and adjoining main line tracks, one known as the Cincinnati Main and the other as the Lexington Main.

On the morning when deceased was killed, the section crew of which he was a member was engaged in making repairs to a cross-over connecting the two main line tracks and also to a part of the Lexington Main next to the said cross-over. The work being done on this cross-over and on the Lexington Main necessitated a temporary discontinuance of the use of the Lexington Main until such repairs were completed; and the foreman of the section crew sent deceased, John Taylor, up the Lexington Main with instructions to flag all trains coming south thereon, but he was not to interfere with any trains on the Cincinnati Main, as the repairs being made at the cross-over and on the Lexington Main next to the cross-over would not affect the Cincinnati Main. Whether a man was sent

in the opposite direction to flag trains coming north on the Lexington Main is not shown by the evidence.

Taylor proceeded up the Lexington Main a distance of about four hundred feet from the cross-over to a grade crossing passed over this crossing, and when he was about two hundred and eighty nine feet beyond the grade crossing, he was struck by a train from the rear and dragged a distance of about one hundred and twenty-nine feet to the point where his body was discovered after the train had passed.

The train which struck him was a freight train known as No. 28, which was switching in the yards at the time Taylor left the cross-over. It was then on the siding of the Cincinnati Main; but after Taylor started up the track, it crossed over the cross-over upon which the section crew was working, got on to the Lexington Main, and proceeded north on that track.

There was no eye-witness to the accident, and the engineer and all trainmen on No. 28 denied all knowledge of it.

The court gave the following instructions, which are complained of by appellant.

"No. 1. The court instructs the jury that if they believe from the evidence that plaintiff's intestate was killed by one of defendant's freight trains moving over defendant's tracks in the yards at Lagrange, and that at the time he was killed, he was on defendant's tracks in said yard in the usual course of his employment, and that defendant's agents and servants in charge of the train that killed him, if it did so kill him, negligently failed to ring the bell or give other signals of its approach, or negligently failed to stop said train after they saw his peril, or after they might have seen it by the exercise of ordinary care, they should find for the plaintiff, unless they believe from the evidence that deceased by his own negligence contributed to such an extent to the injury that caused his death that but for his negligence it would not have happened, and in that event, plaintiff cannot recover, unless defendant's agents in charge of said train knew, or could have known by the exercise of ordinary care, of the peril in which deceased's negligence, if he was negligent, had placed him, and thereafter failed to observe ordinary care to avoid the injury and death that followed."

"No. 3. It was the duty of decedent to keep a lookout for defendant's trains in the yards while on the way

to the point he was directed to go, and to use ordinary care to keep out of their way, and if the jury believe from the evidence that deceased failed to do this, and as a result thereof, he was injured, he was guilty of negligence, and the jury should find for the defendant, unless they believe from the evidence that the defendant's employes and agents in charge of its engine saw, or by the exercise of ordinary care could have seen, decedent's peril in time to have stopped the train and avoided the injury.''

Appellant complains of these instructions, insisting that it owed to deceased no lookout duty. As to flagmen generally, the rule is that stated in Ellis' Admr. v. L. H. & St. L., 155 Ky., 745: ''When a flagman is sent out to watch for trains and warn them of danger, the company and its trainmen have a right to presume that he will not only watch for trains but also for his own safety, and his failure to do this is his own negligence, and he cannot recover for an injury which he received by reason of his neglect, unless his presence and peril were discovered by those in charge of the train in time to avoid striking him by the exercise of ordinary care.'' See also Coleman v. P. C. C. & St. L., 63 S. W., 39, 23 R., 401; Conniff v. L., H. & St. L., 124 Ky., 763, 99 S. W., 1154, 30 R., 982; Wickham's Admr. v. L. & N., 135 Ky., 288, 122 S. W., 154; L. & N. v. Hunt's Admr., 142 Ky., 778, 135 S W., 288; C., N. O. & T. P. v Harrod's Admr, 132 Ky., 445, 115 S. W., 699.

But the facts in this case at bar are not similar to the facts in the cases cited. Here, the flagman was sent out to flag trains coming south on the track upon which he was walking north. At his back was a defective track undergoing repairs, which repairs made it necessary to stop trains from running on said track and were the cause of his being sent out to flag trains coming south on said track. Justified as he was in believing that for the time being, the track upon which he was walking was out of commission, he was charged with no expectation of any train coming up behind him on that track.

On the other hand, the company was using a track which its servant had a right to believe was not going to be used for the passage of trains for the time being. Under these circumstances, was the duty of the company to the flagman, in the operation of a train over that particular track, any less than its duty to its other servants? This court does not so believe.

Under the evidence, the place where Taylor was killed in the Lagrange yards was a place where the presence of persons on the track should reasonably be anticipated, and it was incumbent on those operating the engine to maintain a lookout for persons on the track. L. & N. v. Lowe, 118 Ky., 260.

And, while it is true that as to flagmen, a train may be operated over a track which is in active service without the keeping of a lookout for flagmen although it may owe a lookout duty to others, yet, in operating a train over a track which has been temporarily withdrawn from service with notice to a flagman, in a place where a lookout duty is owed to others, a train owes a lookout duty to flagman also unless there has been notice to such flagman of the resumption of traffic on such track, or until an ordinarily prudent person might reasonably expect traffic to be resumed on such track.

It follows, therefore, that the lower court properly instructed the jury.

2. But, it is insisted by appellant that it was entitled to peremptory instruction upon the ground that there was no evidence of negligence upon its part.

It was shown in evidence that Taylor went up the Lexington Main; that Train No. 28 went up that track behind him; and after it passed, the dead body of Taylor was discovered between the rails of that track; the character of the injuries upon his body, the marks upon the ties, and the condition of the cinders between the ties, upon a fair-minded consideration of the evidence create an undeniable inference that he was struck by the train from behind.

The engineer testified that he was keeping a lookout forward and that he did not see deceased at any time anywhere. But this testimony is contradicted by all the physical facts. John Taylor was seen going up the track just before the train pulled out; his body was found between the rails after it had passed. It cannot be true that the engineer maintained a lookout forward, and also that he did not see John Taylor at all, either beside the track or on it, for he was there.

One of two things must be true; either the engineer was not keeping a lookout, or else he saw John Taylor. And, as it was shown in evidence that the engineer was leaning out of his cab, looking back instead of forward, until after the engine passed the grade crossing, the jury

had a right to believe that he continued to look back, and for that reason did not see John Taylor on the track.

It is true that plaintiff produced no direct evidence to show that the engineer was not keeping a lookout forward at the time Taylor was killed; but the evidence which was introduced is such as to justify undeniable inference.

This is not a case where a dead body is found on the track, death having resulted from an unexplained cause as in Caldwell's Admr. v. Ches. & Ohio Ry. Co., 155 Ky., 609. In the case at bar, the deceased was seen passing over the grade crossing walking up the track; a train follows up the track behind him; the engineer is observed to be looking back until after he passes the grade crossing and as long as he is within the vision of the witnesses; at a point two hundred and eighty-nine feet beyond the crossing, the deceased is struck from behind as shown by the injuries on his body, and the marks on the ties made by the nails in the heels of his shoes; and the condition of the track shows the distance he was dragged. The engineer denies having seen deceased on the track; but nevertheless, he was there, and the only reasonable inference to be drawn is that the engineer was not keeping a lookout. All the facts in the case point to this except the statement of the engineer that he was looking; and that he was looking is contradicted by his statement that he did not see Taylor, and by all the facts proven in the case.

It is suggested that Taylor may have been killed in an attempt to board the train. He was an old man and crippled. It is not reasonable to believe that he would attempt to board a train moving eight or ten miles an hour to ride about 800 feet, especially in view of the fact that by the time it should have arrived at the place where he was going, its speed would have considerably increased and made it extremely difficult to alight therefrom.

All the evidence points to but one explanation of this accident. Train No. 28, when Taylor left the cross-over, was on the Cincinnati Main. The cross-over and the Lexington Main where it connected therewith were being repaired. He was being sent out on the express errand to flag trains coming from the north, in order to keep them from coming in on the Lexington Main for the reason that that track and the cross-over were being repaired. He believed that train No. 28, which struck him,

could not and would not be permitted to pass over the defective cross-over on to, or to pass along the Lexington Main track. And, when he heard the noise or signals, if any were given, of the train behind him, because of his faith in the fact of temporary withdrawal from service of the Lexington Main, he believed the train was on the parallel track, the Cincinnati Main, and lulled in the security of that belief, he failed to leave the track in time to escape injury.

When the question is one of negligence or no negligence, it is well-settled law that where the evidence is equally consistent with either view—the existence or non-existence of negligence—the court should not submit the case to the jury. Louisville Gas Co. v. Kauffman, 105 Ky., 131. But such is not the state of fact here presented.

Negligence is not to be presumed; but it may be inferred; and the inference here is absolutely justified under the proven facts. There is no equilibrium of proof involved. The only question in the case, in the ultimate analysis of it, is whether the statement of the engineer that he was keeping a lookout forward, is true, contradicted as it is by all the other evidence in the case; and that question was one for the jury.

The judgment is affirmed.