## City of Jackson v. Haddix et al.

Nov. 10, 1939.

Bach & Noble and J. P. Haney for appellant.

A. H. Patton and Henry L. Spencer for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Reversing.

Appellee's widow, and the heirs-at-law of William Haddix, deceased, owned a lot in the City of Jackson upon which were situated the family residence and a small building used as a barber shop. As described in pleadings, the lot fronted on Franklin Street, a width of 60 feet, and a narrow strip of the lot ran back 210 feet to what is called Bridge Street, now a part of Jackson-Booneville Highway. We are unable to give a more definite description, because certain exhibits presented below, which might have been of enlightenment to this court, are not filed with this record.

The proof in the case shows that this lot is in a lower part of a swale, in the section of the city in which it is situated. The North Fork of the Kentucky River runs through the town in a north-westwardly direction, and appellee's lot is on the south side, not a great distance from the river. It is amply shown in the record that for many years past, on occasions of floods or

heavy rains, the river would overflow this portion of the city, and would sometimes rise as high as 15 feet on appellee's lot, at one time rising to near the second story of the residence.

Since the filling in of Franklin Street and the building of a fill at the rear of the property, the water continues to accumulate on the lot. The fill at the rear of the lot was built by the highway department of the State so as to raise the highway or street above the high water mark, in making approach to a nearby bridge across the river. This fill is 200 yards long, 60 feet wide, and at the point where it crosses part of the lot in question, 20 feet in height. At some points on or near appellee's lot, and at the bottom of the fill, are drain pipes which appellees in pleading say are 30 inches in diameter.

Feeling aggrieved at the situation in which they say the filling in of Franklin Street in front of their residence, and the making of the fill at the rear, left their lot, appellees in 1938 filed suit against the city for $2,500 damages. They say in substance that in the latter part of 1935 and the early part of 1936, the city "took possession of Franklin Street, fronting their lot, and made a deep fill in the street," the result of which was to bring the level of the street about three feet higher than the level of the front of their property. Prior to this 1935-36 raise, Franklin Street was about 7 feet below the level of the property. The situation may be thus stated: Formerly a person going to the Haddix residence would have to go up seven or more steps; since the raise they go down about three or four steps.

In their petition it is alleged that the alteration of the street has greatly inconvenienced the owners in the use of their property, it being specifically alleged that the change seriously interfered with their ingress and egress. There is no allegation or proof of interference with the use of driveways.

In regard to the injury caused by the fill in the rear of the lot it is charged that the tiling is not of sufficient proportions "to take care of the water that accumulates above said fill in time of floods or during heavy rains; that when the river backs up through the tiling it reaches a depth of 15 feet, and when the river ebbs, the tiling becomes stopped up and leaves mud and debris standing for a week or ten days, thus creating an unhealthy condition."

Later, apparently attempting to join the alleged injuries caused by raising Franklin Street and the erection of the fill, they allege: "That the change in the grade of Franklin Street * * * has placed their property in a deep hole and converted same into a cess-pool, and their premises which were high and healthy before said constructions were made, are now surrounded with foul odors and surroundings, all of which was created and brought about by said city making said changes and insufficient constructions, rendering the property undesirable, depreciating its value by the sum of $2500," which amount the owners sought by way of compensatory damages.

In answer the city denied such allegations as were material, particularly denying "that at the time the buildings were erected * * * there had been a grade established on Franklin Street, at a level of 7 feet lower than the level of the buildings," and also denied that any grade had been established at any time, before or since erection of the buildings. Affirmatively it asserted that from time to time it gradually raised the street so as to elevate it above high water mark.

As to the fill at the rear of the lot, it pleads that it was built by the State Highway Department, according to plans and specifications accessible to appellee, prior to its construction; that appellees sold to the State from the rear of their lot, a strip of land for the purpose of building the highway in the manner provided; therefore, plaintiffs were estopped to charge the city with liability. The city specifically denied the allegations that the raising of Franklin Street and the construction of the fill caused any of the alleged injuries.

Plaintiffs replied, denying that the fill on Bridge Street (or its extension) was built in the manner set out in answer by the city, or that they had consented or agreed to its construction according to plans. They did not deny the sale of the strip to the State for highway purposes. The reply completed the issues, and upon trial the jury awarded plaintiffs the sum of $300 and judgment was entered accordingly. Motion for a new trial was overruled and on motion for appeal several grounds for reversal are advanced.

It is first complained that the verdict is not sustained by the pleadings, since it is not sufficiently alleged that a grade of Franklin Street had been fixed

prior to the year 1935, when the last elevation of the street began, citing City of Somerset v. Carver, 221 Ky. 552, 299 S. W. 191, and cases referred to in that opinion.

We need not go into a discussion of the conclusion reached in the cited opinions. They do establish the general rule that a city may, without liability to the abutting property owners, establish an original grade of its streets, though the grade established is different from the natural grade.

However, we do not deem appellant's point well taken, since from a close reading it may be said that the pleadings in a way state that there had been prior establishment of grade. At least the appellant in answer so thought, since it denied in apt terms that there had been any grade established on Franklin Street prior to 1935, which to some extent cures the slightly defective pleading by appellant. However, we are clearly of the opinion that if appellants did plead the establishment of the Franklin Street grade, they failed to prove such establishment.

Testifying alone for all plaintiffs, Mrs. Haddix said that some work was done on Franklin Street in the year 1912, by a contractor under the supervision of some one, who was said to have been the city engineer, and that her husband, at his expense put in concrete sidewalks.

A witness was called by appellees who had formerly been an officer of the city, who did not recall that at the time of fixing Franklin Street the grade had been established. He also recalled that in 1904 or 1905 the city made improvements on Franklin Street by raising its level; this he said was done by contract and under the supervision of the city engineer, and witness first said that the grade of the street was fixed ''under the contract,'' and he thinks there was an ordinance providing for the contracts. Such ordinance was not exhibited, though a book was produced, but it appeared that the specifications of the contract had not been copied into the book. The specifications were read, and it was found that Franklin Street was not covered. On cross-examination the witness frankly admitted that he did not know whether or not there had ever been any grade established on Franklin Street.

The city clerk was called and exhibited an ordinance of 1912, and appellees had it read into the record, but

as we observe the various sections of the ordinance, its terms only related to the establishment of grades of sidewalks. This was not sufficient proof that the street grade had been theretofore, or was thereby established. Board of Councilmen of City of Frankfort v. Brammell, 220 Ky. 132, 294 S. W. 1076; City of Earlington v. Newton, 215 Ky. 445, 448, 285 S. W. 196.

We are satisfied that the proof offered by appellees was not sufficient on this controverted question, though it may be noted that appellants did not introduce proof, by copy of ordinance or otherwise, as to the grade establishment in 1935. We may be wrong, but it seems to us that the establishment of the Franklin Street grade might be shown in a satisfactory and competent manner.

It is contended that appellees failed in their pleadings to sufficiently state a cause of action for consequential damages caused by the fill at the rear of the lot, because it was admitted that they had sold the right of way for the fill and received full consideration therefor, the idea being that it is presumed that in accepting the purchase price, vendors took into consideration prospective or consequential damages to their property arising from a construction of the fill.

We wrote in Breathitt County v. Hudson, 265 Ky. 21, 95 S. W. (2d) 1132, 1134, that "a deed to a right of way, such as the one [there] before us, reciting the consideration to be, in part, the resulting benefits to the grantor's adjacent property by reason of the construction of the highway, forbids recovery for consequential injury to that property, * * * arising from the proper, prudent, and good-faith exercise of the right to put the land conveyed to the intended use." In this case, for some reason or other, the admittedly executed deed (or copy) from appellees to the state or highway department was not exhibited, hence it is that the pleading and proof introduced, or admissions of appellee's, are insufficient to authorize us to hold that appellees were estopped to assert grievances arising from construction of the fill.

We come now to the contention that the court erroneously refused to give to the jury requested instructions to find for appellants, which we conceive to be meritorious. We have already shown that there was not sufficient proof of the prior establishment of the grade of Franklin Street, or proof of injury, to warrant sub-

mission to the jury the question of appellee's right to recover on this count.

However, and in discussing the question further, we shall treat the proof as it related to alleged injury or right to damages in a general way. As to the proof that the raising of Franklin Street caused injury to the property of appellees in either of the respects mentioned, we may say that there was no sufficient proof to warrant a finding of damages against the city. The converse is true, since the weight of the evidence, and some of this by appellee's witnesses, tends to show that rather than damaging her property, its value was enhanced, and it was put in such position that occupants were not at all inconvenienced in the enjoyment of their premises.

Mrs. Haddix, in testifying as to the extent of damage as represented in money value, did not undertake to fix such damage in the way it is ordinarily fixed in cases like this. She stated that she "would not take $1,000, and leave the property like it is." She said at one time she was offered $7,500 for the property, "but like a goose wouldn't take it."

Another witness called for appellees first testified that "the saleable value of the property had been damaged from $1,200 to $1,500," though he admitted on cross-examination that the situation theretofore existing in Franklin Street had been remedied. His only criterion of damage was "the inconvenience of the street in front, and the fill behind" the property.

Another witness stated that the value of the property was about $2,500, before the work was done, but declined to venture an estimate of its value after the projects had been completed. This character of testimony is not sufficient to give to the jury the correct idea as to before and after values, particularly so when it is sought to hold one liable in damages for injurious acts.

In presenting appellant's side, it seems there was little or no evidence offered as to before and after values, or any value. Appellant appears to have been contended to (and did successfully) prove by a host of witnesses that there had not been any resulting injury to appellee's property by reason of the elevation of the street, or the making of the fill, taking the position that there was little or no change in the condition of the lot after the fill was made, and showing that the drainage

was fully sufficient to take care of the water accumulating after floods or heavy rain falls.

The court instructed the jury that it might, if it found for plaintiff, award her the sum sued for, $2,500, while the highest estimate fixed by any witness was $1,500, which amount should have been fixed as the maximum, which under the proof might be recoverable. The first instruction should also have embraced a converse instruction, which is ordinarily done by adding the words: "Unless you so believe you should find for defendant." Humphrey v. Mansbach, 251 Ky. 66, 64 S. W. (2d) 454, 456.

The other criticism is to the effect that the instruction relating to insufficient drainage was erroneous, in that it failed to submit to the jury the question as to whether the fill, or the culverts as placed, constituted a permanent or temporary structure. The idea advanced is that there is quite a difference in the measure of damages to be fixed when the one or the other situation exists. This is true, since where the injury is permanent the measure of recovery is the difference in the market value of the property before and after the improvement. Where the improvement is temporary and such that it can be repaired or altered at reasonable cost, the criterion is—if the property be occupied by the owner—in addition to reasonable cost of necessary repairs, the damage to its use during the continuance of the nuisance or injury, covered by the period for which the action is brought. The question of limitations is also one to be observed. Ewing v. City of Louisville, 140 Ky. 726, 131 S. W. 1016, 31 L. R. A., N. S., 612; Chesapeake & O. R. Co. v. Salyer, 272 Ky. 171, 113 S. W. (2d) 1152; Chicago, St. L. & N. O. R. Co. v. Hicks, 249 Ky. 578, 61 S. W. (2d) 37.

However, there was no substantial proof introduced by either party (nor allegation) on the question of whether or not the alleged structure was permanent or temporary. It does appear from a reading of the record that the parties and the court looked upon the improvements as having been of permanent nature. The defendant offered no instruction on this phase of the case.

After giving the entire record careful consideration, we are of the opinion that the court should have, at the close of appellee's testimony, instructed for defendant

as to any alleged injury caused by the elevation of Franklin Street, and instructed for defendant at the close of all the testimony.

We cannot foresee what turn the trial may take, but if the proof introduced by appellees is of the same quality, or no stronger or no more convincing than appears in this record, the court should follow the directions above suggested as to directed verdict.

The motion for appeal is sustained, appeal granted and judgment reversed with directions for new trial consistent with the foregoing.