# High Splint Coal Co. v. Cowans.

Oct. 24, 1941.

H. C. Gillis and T. E. Mahan for appellant.

Edward Hill for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Affirming.

The appellee, Hugh Cowans, Jr., an employee of appellant, High Splint Coal Company, while attempting to remove a scotch or wedge from under the wheel of a loaded coal car in appellant's mine had a portion of two fingers cut off when the car was moved and the wheel ran over his fingers. He was awarded $800 by a verdict of the jury and from a judgment entered on that verdict this appeal is prosecuted.

The first contention, that there was only a scintilla of evidence of negligence on the part of the appellant entitling appellant to a directed verdict under the rule laid down in Nugent v. Nugent's Ex'r, 281 Ky. 263, 135 S. W. (2d) 877, necessitates a brief statement of the evidence. The appellee had loaded a mine car with coal and beneath the wheels were scotches or wedges to prevent it from rolling. An electric motor with several empty cars preceding it backed into appellee's working place and coupled with the loaded car to remove it from the mine. The mine train was operated by a motorman who was accompanied by another employee designated as a coupler, whose duty it was to couple to loaded cars. The coupler had coupled to the car loaded by appellee. Appellee attempted to testify that when the coupler started from the loaded car to the motor he told him to wait until he, appellee, had removed the scotches from under the car. This testimony was excluded, however, since it was shown that the coupler was dead at the time of the trial. Appellee testified that the motorman did not say anything but that while he was removing the

scotches the train was suddenly started and ran over his fingers. Another employee, Shelby Gibson, testified that he was sitting in a break-through about 30 feet from the appellee on the opposite side of the loaded car; that after the coupler walked back to the motor and got up on it appellee called to the motorman saying, "John, wait until I get the scotches out" and that the motorman replied, "I'll wait"; that about the time the appellee reached down to get the scotches the car was moved.

It is most earnestly argued that the testimony of the witness, Gibson, is so full of contradictions and improbabilities that it does not rise up to that character of testimony sufficient to warrant the submission of a case to the jury. This argument lays special stress on the fact that this witness' testimony as to appellee telling the motorman to wait until he got the scotches out is in direct contradiction of appellee's own testimony that he told the coupler, and not the motorman, to wait. In this connection it must be remembered, however, that appellee's testimony along this line was excluded from the jury so that, theoretically, there was no contradiction. However, even though the evidence be considered as if appellee's testimony concerning his conversation with the coupler remained in the record, we are still of the opinion that Gibson's testimony constituted more than a mere scintilla of evidence. While it contains numerous contradictions within itself and is contradictory of appellee's own testimony, we are nevertheless not prepared to usurp the function of the jury and determine that this witness did not speak the truth. While the scintilla rule was abolished in the Nugent case, nevertheless it was pointed out in that opinion that there was no desire or tendency on the part of this court to usurp the function of the jury. Since the adoption of the rule in that case it is all the more necessary to the preservation of our jury system that this court should not constitute itself triers of fact, thereby usurping the province of the jury. We have considered the entire testimony of this witness carefully and are of the opinion that the jury were warranted in relying on this testimony in making their verdict, which they obviously did.

It is next argued that the appellee was not engaged in the performance of any duty pursuant to his employment but was a volunteer in attempting to remove the

scotch from under the wheel of the car and therefore appellant owed him no duty. However, by instruction No. 1, hereinafter quoted, the jury were authorized to find for the appellee only in the event the motorman *knew* that appellee was in a position of danger at the time the coal car was moved. Obviously, if the motorman knew appellee was in a position of danger so that he would likely be injured by the movement of the train, he was guilty of negligence if he moved it in these circumstances and it was immaterial whether he was a volunteer or was under a duty to remove the scotch. The same reasoning applies to appellant's contention that the appellee's injuries were the direct and proximate result of his own negligence.

Instruction No. 1 given the jury was as follows:

"If the jury believe from the evidence that the plaintiff, Hugh Cowan, while engaged as a coal loader in the performance of the work required of him by the defendant in removing a scotch from the wheel of a bank car which he had loaded, and while the motorman was operating the motor of the defendant, knew that the plaintiff was in a position of danger, so that he might be injured by the movement of the coal car at the time the car was moved, the motorman in charge of the motor negligently started the motor and that the plaintiff was thereby injured, the law is for the plaintiff and you will so find."

Instruction No. 2 dealt with the measure of damages. These instructions given were not excepted to. It is contended that instruction No. 1 was erroneous for a number of reasons, the first being that it assumed that it was appellee's duty to remove the scotch from under the wheel of the car. However, since the jury were authorized to find for the appellee only if the motorman knew that he was in a position of danger the assumption in the instruction that it was appellee's duty to remove the scotch (if the instruction is susceptible to this construction) was harmless. Had the instruction been so worded as to predicate liability in the event the motorman by the exercise of ordinary care could have known of appellee's danger, a different situation would have been presented but as this was not done appellant's rights were not prejudiced.

The next objection assigned to the instruction is

that the jury were not told in this or any other instruction that unless they believed from the evidence as set out in instruction No. 1 they should find for the defendant. In other words, the objection is that no converse of the instruction was given. In at least two recent cases we indicated that a converse of an instruction of this characted was proper. Humphrey v. Mansbach, 251 Ky. 66, 64 S. W. (2d) 454; City of Jackson v. Haddix et al., 280 Ky. 436, 133 S. W. (2d) 547. However, no discussion of the question was entered into and it is apparent from the reading of those cases that the judgments were not reversed merely for the failure to give such a converse instruction. We have written so many times as to require no citation of authority that the court in a civil case is not required to instruct the jury upon any point, or theory, or issue, or at all unless seasonably requested by a party but if the court undertakes to instruct the jury sua sponte (as was done here) the instruction must be correct. By instruction No. 1 the jury were authorized to find for the appellee only if they believed that the motorman moved the car at the time he knew appellee was in a position of danger so that he might be injured by its movement. By implication this was a negation of the jury's right to find for the appellee under any other conditions or circumstances and therefore the instruction was correct as far as it went. This being true, if appellee desired that a converse of the instruction should be given it should have so requested the court. Assuming, without deciding, that it would have been reversible error to have refused a converse of the instruction at appellee's instance, we are of the opinion that appellee is in no position to complain since it made no such request.

It is also urged that the instruction was erroneous in that the word "negligently" was not defined. We see no merit in this argument. The word "negligently" may be regarded as surplusage and could well have been omitted from the instruction. If the motorman moved the train at a time when he knew appellee was in a position of danger and likely to be injured by its movement, he was obviously guilty of negligence. It is also urged that the instruction authorized a recovery by the plaintiff if the *plaintiff* knew that the *plaintiff* was in a position of danger. We do not think the instruction is susceptible to this construction. While it is artlessly

worded, we think the jury could easily understand that the plaintiff was entitled to recovery only if the *motorman* knew that the plaintiff was in a position of danger.

By instruction No. 2 the jury were permitted to compensate appellee for loss of time and for impairment of his power to earn money as well as for pain and suffering without requiring that damages for impairment of power to earn money should begin at the end of the period for which lost time might be allowed. It is contended that reversible error was committed in failing to qualify the instruction properly since it authorized double damages for the same period. We are of the opinion there is no merit in this contention. It is true that certain cases have held that the failure to give such a qualifying instruction was error where, apparently, no request was made therefor by the defendant. Louisville & N. R. Co. v. Deering, 188 Ky. 708, 223 S. W. 1095; McLellan v. Threlkeld, 279 Ky. 114, 129 S. W. (2d) 977. However, an examination of the opinions of this tenor makes it apparent that the judgments were not reversed for this reason and they did not specifically overrule, and are not in line with, numerous definite holdings to the contrary. In Blue Grass Traction Co. v. Ingles, 140 Ky. 488, 131 S. W. 278; Illinois Central R. Co. v. Mayes, 142 Ky. 382, 134 S. W. 436; Nashville, Chattanooga & St. Louis R. Co. v. Banks, 168 Ky. 579, 182 S. W. 660 and Kentucky Power Co. v. Kurtz, 236 Ky. 169, 32 S. W. (2d) 991, it was held that the defendant was in no position to complain of the trial court's failure to give such a qualifying instruction where no request therefor was made. We adhere to the definite and considered rule laid down in these latter cases.

While it is doubtful that our conclusion would be the same as that of the jury under the evidence and instructions as given, we are nevertheless of the opinion that the verdict was not flagrantly against the evidence and on the whole it appears that there was no error prejudicial to appellant's substantial rights.

Judgment affirmed.