# Paxton's Adm'x v. Kentucky & Indiana Terminal R. Co.

Feb. 6, 1945.

Wallis Downing for appellant.

Hubert T. Willis and Charles W. Milner, (Bullitt & Middleton of counsel), for appellee.

OPINION OF THE COURT BY JUDGE HARRIS—Affirming.

This is an action by Annie Crockett Paxton, administratrix of the estate of her deceased son, William Hendrick Paxton, to recover damages for the death of her intestate. The only question presented on this appeal is that of the correctness of the lower court's action in peremptorily instructing the jury to find a verdict in favor of the defendant at the close of all the evidence.

The Ford, Bacon & Davis Company was engaged in the construction of a huge synthetic rubber plant, a thirty-five million dollar project, in Jefferson county. To obtain the material and supplies that would be required as the work progressed, arrangements were made with the appellee railway company whereby the latter ran temporary tracks into the premises where the plant was being constructed. One of these tracks lies just south of the plant, runs east and west, and is intersected at right angles by a vehicular and pedestrian crossing. The deceased Paxton was an employee of the Ford, Bacon & Davis Company, and as such he directed the operatives of appellee's trains in the placing and removal of cars. That is, as cars of material were brought in he would work with the train crew, directing them as to just where each car should be placed and as to when the empty cars should be removed. In connection with this work it was his custom—according to appellee's testimony, which appellant seems to accept—to ride with the

train crew on the engine and cars and, as the movement of the train required, act as a flagman. On the track in question, immediately east of the crossing mentioned, on the occasion under consideration, there were a number of cars which were to be taken away. In view of the danger that these cars, uncoupled as they were, might coast onto the crossing, Paxton went forward to act as a flagman. After he had reached the crossing a truck drove thereon from the south and stopped on the track. Paxton then stepped upon the track, along the east side of the truck. At that moment the cars moved onto the crossing, crushing Paxton against the side of the truck.

The parties seem to agree that the correctness of the lower court's action depends on whether Paxton had signalled for the train's movement. The question on which they disagree is whether the evidence was such that the court was authorized to say as a matter of law that the signal was given, it being the contention of the appellee that the evidence was, and of the appellant that it was not, of that character and conclusiveness. On this point the testimony of the appellee is explicit that the signal was given. The conductor and other members of the crew testified that when the engine and the cars connected with it came onto the track, which was at a point several hundred feet east of the crossing, it was realized and discussed by them and Paxton that there was danger that some of the cars might coast onto the crossing; that it was agreed that Paxton should go to the crossing, act as flagman, and give signals, which, in turn, should be relayed through the conductor and other members of the crew to the engineer; that pursuant to this plan the conductor and Paxton left together—Paxton going to the crossing, the conductor placing himself at a point from which he could receive and relay Paxton's signals; that it was in response to Paxton's signal, received by the conductor and relayed in the manner indicated, that the train made the movement which resulted in the accident; that the conductor and Paxton were both on the north side of the track at the time the signal was given and relayed.

The appellant's evidence to show that the signal was not given was only negative and circumstantial—it was not direct and affirmative as was that of the appellees to show that it was given. The testimony of her

witnesses was merely that when they saw Paxton he was on the south side of the track, or on the crossing, and they did not see him give any signal. It is assumed —and from an examination of the record we find—that appellant's strongest evidence is that which her counsel quote in their brief:

E. O. Johnston: "Q. Had you seen Paxton on the north side of that railroad track previous to this accident? A. No, sir."

Harry Fry: "Q. Which direction did he come from? A. He came from the south side of the track.

"Q. Going in which direction? A. Going north, and just about the time he reached the center of the truck, without any warning, the train reversed and he was caught and mashed to death between the truck and the coal car. That is the way I saw the accident.

"Q. And from which side of the train did Paxton come? A. He came from the south, or the right side."

Bernard Meyer: "Q. Which way was Paxton going, if you saw him? A. He was going from the south to the north.

"Q. Did you see him? A. Yes, sir; I did."

Earl Smith (who was on the truck which was involved in the accident):

"Q. Did he give any signal to the railroad crew— the members of the crew? A. I saw no signals given at all.

"Q. Was he in any position to give a signal? A. Not where he was standing at, it was impossible to see the train crew.

"Q. Where was he standing? A. Paxton was standing approximately three or four feet from the coal car.

"Q. On the side of the machine shop, or the opposite side? A. On the opposite side."

From the fact—clearly established by other portions of the evidence—that the curvature of the track was such that a signal given by Paxton from the south side of the crossing could not have been seen by the conductor, who was on the north side, and from the testimony quoted above, the appellant argues that her evi-

dence and the general circumstances were sufficiently contradictory of appellee's affirmative evidence to make it proper for the jury to say whether the signal was in fact given. If her witnesses had testified that their positions and opportunities for observation were such that if Paxton had signalled from the north side as testified to by the conductor they could and would have seen him, and that they did not see him give any signal from that side, or if they had testified to facts from which it would be unreasonable to say that they would not have seen him, and then they had said that they did not see him, appellant's argument would be acceptable. But for the witnesses merely to say that they saw Paxton on the south side of the track, or on the crossing, is no evidence that he had not previously given a signal from the north side, as testified to by the conductor. The appellant's cited authorities—Louisville & Nashville Railroad Co. v. Hall, 273 Ky. 590, 117 S. W. 2d 571; Nashville, C. & St. L. R. Co. v. Williams, 285 Ky. 211, 147 S. W. 2d 93; High Splint Coal Co. v. Cowans, 288 Ky. 66, 155 S. W. 2d 488; 39 C. J. 270, section 391; Louisville & N. R. Co. v. Lowe, 118 Ky. 260, 80 S. W. 768, 25 Ky. Law Rep. 2317, 65 L. R. A. 122, Louisville R. Co. v. Offutt's Adm'x., 246 Ky. 508, 55 S. W. 2d 391; Louisville & N. R. Co. v. Taylor's Adm'x., 158 Ky. 633, 166 S. W. 199—merely affirm what is already conceded; that it would have constituted negligence to move onto the crossing in the absence of a previous signal to do so.

From what has been said it follows that the judgment should be and it is affirmed.