## Cherry Brothers v. Christian County.

(Decided January 23, 1912.)

### Appeal from Christian Circuit Court.

1. Counties—Contracting For Roads.—A county has authority under the statute to contract for stone to macadamize one of the county roads, and may in contracting for stone bind the county to pay the landowner such damages as he may sustain by reason of the getting out of the stone.

2. Circuit Courts—New Trials—Discretion.—An order of the circuit court granting a new trial will not be set aside unless the discretion of the circuit court is palpably abused.

3. Counties—Actions Against—Damages Recoverable.—In a suit against a county for damages for injury in getting out stone under a contract as set out in No. 1, it is incompetent for the county to show that the farm was greatly enhanced in value by the building of the turnpike.

4. Same—Injury to Spring.—The measure of damages for an injury to a spring where the injury is temporary, is the reasonable cost of removing the trouble, and the value of the use of the spring until the trouble can be so remedied by ordinary care, or if the use of the spring is only impaired, the fair value of the impairment of the use, until the trouble can be remedied.

5. Same—Argument of Counsel.—Argument of counsel should be confined to the law and facts. It is improper for a county attorney to urge the jury to find for the county in order to save the money of the county and their money as taxpayers.

DOUGLAS BELL, TRIMBLE and BELL for appellant.

JOHN C. DUFFY for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—
Reversing.

Cherry Brothers own a farm of 400 acres in Christian county worth about $16,000. The county was proposing to macadamize a county road which ran past the farm and desired to get from the Cherry Brothers rock for this purpose. The rock was near a spring which the Cherry Brothers relied on mainly for water, and they were apprehensive that the blasting of the rock might injure the spring, and that the contractor might interfere with their farming operations. The spring was near their horse lot; they used it for watering their stock, and as they could not continue this use while the blasting was going on, they desired a pump put in so that they could get the water for their stock. Finally a written contract was executed between them and the county, by the terms of which they agreed that the county might use the quarry; and the county, the party of the second part, obligated itself as follows:

"Party of the second part in consideration of the foregoing agrees and binds itself to furnish to parties of the first part, a first class and up-to-date force pump, with necessary pipes, etc., sufficient to pump water from the spring in said horse lot to a water trough in said lot, said water trough to be located by party of the first part, but paid for by party of the second part; it is further agreed and understood that the party of the second part as a part of this contract, binds and obligates itself to pay to parties of the first part all damage they may sustain by reason of injury to their fences, gates, growing crops, grounds and spring above mentioned—whether said injury or damage is occasioned by the servants and agents of party of the second part, or by independent contractors engaged in the building and constructing of said pike. But it is agreed that the party of the second part is to have the right to remove sufficient dirt from around the quarry to enable it to properly quarry the stone, and is to have sufficient stone for its purposes aforesaid."

The county by its contractor went on and got out the rock. Cherry Brothers subsequently brought this suit against the county for damages charging that the blasting of the rock had ruined the spring and that the contractor had damaged their farm, fences and crops; also that the county had failed to furnish the pump. The

county filed an answer denying the allegations of the petition; proof was taken, and on a trial of the case before a jury there was a verdict for the plaintiffs for $500. The court granted a new trial on the motion of the county. On a second trial of the case there was a verdict in favor of the plaintiffs for $100. The court entered judgment on the verdict, refusing a new trial. Cherry Brothers appeal.

It is insisted for them that the court erred in granting a new trial on the motion of the county after the first trial of the case. The circuit court has a large discretion in the matter of granting new trials and our rule is to give much greater weight to an order of the circuit court granting a new trial than one refusing it; for the reason that he sees and hears the witnesses, and there may be reasons inducing him to believe that justice has not been done, which may not fully appear to us from the transcript. The granting of a new trial leaves the parties where they were. Under our rule we do not see that we can interfere with the discretion of the circuit court in granting the new trial on motion of the county.

It is insisted for the county that it is not liable for damages under the contract because it had no authority to make the contract. The Kentucky Statutes provides:

"That any county in this State in which any of the public roads thereof have been macadamized and are being maintained by taxation, may acquire title to one acre of land adjacent to or near each mile of such road for the purpose of obtaining material with which to repair said road. And may also acquire the land necessary for a passway to and from said one acre of land.

"When the land necessary for a quarry and the entrance thereto can not be obtained by private agreement with the owner, the county may have the same condemned as provided for the condemnation for lands for railroads. And when land necessary for a public highway can not be obtained by private agreement with the owner, the county may have the same condemned as provided for the condemnation for railroads. (Sec. 4305a, Kentucky Statutes.)

"That whenever any Road Supervisor of any county of this Commonwealth, or other officer having supervision of roads of any county of this Commonwealth shall be unable to contract with the owner of any land or material necessary to construct, maintain or repair any road or bridges under his supervision, he shall file with

the judge of the county court a written description of the land or material or both sought. to be condemned. Said judge shall thereupon by order made in the county court, at a regular or special term, appoint three impartial housekeepers of the county who are owners of land, to view and assess the value of the land, material, or both, to be condemned.'' (Kentucky Statutes, Sec. 4305b.)

It will be observed that the county is authorized by the statute to acquire title to one acre of land adjacent to or near each mile of the road to be constructed for the purpose of obtaining material with which to repair the road and that if it can not obtain the property by private agreement with the owner, it may have it condemned. By necessary implication the county court is authorized to obtain the land necessary by agreement with the owner when it can do so. The power to agree with the owner and thus acquire the land necessarily carries with it, the power in the county to make such agreements as are reasonable and necessary for this purpose in the judgment of the county authorities. The contract, therefore, which was made with the Cherry Brothers was not authorized. This is not an action for tort as in the case of Downing v. Mason Co., 87 Ky., 208; but is an action upon a contract to recover for its breach. It is true no appropriation can be made of county funds to pay any claim unless authorized by statute but this is a liability created pursuant to the statute.

The circuit court allowed the county to prove by a number of witnesses that the building of the turnpike in front of the Cherry farm added very much to its value, some of them stating that it added much more to its value than the damage to the water supply. The jury under the direction of the court separated its findings of damages, thus showing by their verdict that they did not allow anything for the damage to the spring. This verdict may well have been induced by the evidence above referred to, which was clearly incompetent. Cherry Brothers are entitled to all the enhancement of their property by reason of the building of the turnpike no less than any other property owner along the line. They are also entitled to the benefit of their contract by which the county agreed to indemnify them in case their spring was damaged. In other words by the contract they are entitled to compensation for any injury to the spring. They are also entitled to such enhancement of their prop-

erty as may result from the building of the turnpike. All the evidence on the subject of the enhancement of the property by the building of the turnpike should have been excluded. The simple question is, was the spring injured and if so, what is the fair compensation for the injury. The court should have allowed the defendants to state the price at which they bought the farm, as this was a circumstance to be considered in determining its value. The price at which property sells is always some evidence of its value.

The court, among other things, instructed the jury as follows:

"The jury are further instructed that in case such injuries to said spring, if any, are temporary only, the measure of damages is such an amount as will reasonably compensate plaintiffs for any loss, inconvenience and unusual labor sustained to them on account of said injury, if any of either, as well as any loss of time and inconvenience and unusual labor, if any, of either, which it is reasonably certain will hereafter result to them on account of such injury, if any, to said spring, not exceeding one thousand dollars."

This instruction does not give the measure of damages correctly. The measure of damages, if the injury to the spring is temporary, is such a sum as will be reasonably necessary to cover the expense of removing the trouble, and if the spring can not be used in the meantime the reasonable value of its use until the trouble can be removed by ordinary care, or if the spring can be used to some extent in the meantime the reasonable value of the impairment of the use until the trouble may be so remedied. In another instruction the court will tell the jury that the injury is temporary if it can be removed at a reasonable expense. The court allowed the Commonwealth Attorney to make this argument to the jury:

"As county attorney, I say to you gentlemen, if you by your verdict, aid these plaintiffs in their effort to obtain money from the defendant by their false pretenses made in this case, you will be in mud the balance of your lives (meaning that they would have mud roads and not turnpikes), I therefore appeal to you as taxpayers of the county, to help me save your money and the money of other taxpayers of this county so that it may be spent in the building of roads upon which you can haul your produce to market."

The attorney had a right to argue under the evidence

that the spring had not been injured and that the plaintiffs claim was rested upon false pretenses, as there was some evidence which went to sustain this view; but the appeal which he made to the taxpayers to save the money of the county, was an appeal to the prejudices of the jury and should not have been allowed. The argument of counsel should be confined to the law of the case as given the jury by the instructions of the court, and the evidence before the jury on the trial. Other matters should not be brought in and especially no appeal should be made to the prejudices of the jury to warp them from deciding the case simply under the law and under the evidence without regard to their personal interests.

Judgment reversed and cause remanded for a new trial and further proceedings consistent herewith.