## B. & B. Oil Co. v. Townsend.

Feb. 26, 1946.

Shumate & Shumate for appellant.

J. M. Wolfinbarger for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE REES—Reversing.

The appellee, Annie Townsend, owns the surface of 29 acres of land which is located in an oil producing section of Estill county. She acquired the land in 1921 after the minerals had been severed from the surface. The appellant, B. & B. Oil Company, by mesne conveyances, became the owner of the oil and gas under this and other land in the vicinity about two years before the institution of this suit. It maintains oil tanks on an adjoining tract of land, known as the Frazier land. Annie Townsend sued for and recovered $500 damages allegedly caused by the defendant, B. & B. Oil Company, in negligently permitting salt water and other refuse from its storage tanks on the Frazier land to flow over the plaintiff's land and into a pond. Plaintiff's cause of action is stated as follows in her petition:

"Plaintiff states that the defendant in the process of pumping its oil wells, have tanks in which crude oil and salt water together, are pumped from said wells and into said tanks and upon selling its oil and running it into the pipe lines, there is much refuse such as salt water and waste oil, known as B. S. which is released from the said tanks by the defendants and permitted to run on the surface of the ground on to the land owned by the plaintiff and as a result thereof, the said salt water and B. S. has for some time been running into a pond on the farm of the plaintiff which is the only source plaintiff has for obtaining water for her stock

and which was also used for a fish pond in which she had a large number of fish and by reason of said salt water and oil running into said pond all of the fish owned by the plaintiff have been killed and the water of the pond has been rendered totally unfit for use for any purpose. All to the damage of the plaintiff in the sum of $500.00.''

The appellant insists that the court erred in refusing to direct the jury to return a verdict in its favor, and it also complains of the instruction on the measure of damages.

When the oil is pumped into the receiving tanks it contains salt water and other waste materials which are drained off before the oil is sold and transferred to the pipe line. Appellant had dug ditches and ponds to carry off and hold the waste material, the usual and customary means employed by oil companies in that vicinity, but the proof shows that the ponds were inadequate, that they frequently overflowed, and salt water and other refuse flowed onto appellee's land and into her pond. It was appellant's contention that the ponds constructed by it for the purpose of taking care of the waste material were adequate under ordinary conditions and overflowed only during extraordinary rainfalls, but its own witnesses admitted that they overflowed during ordinary rainfalls. The applicable rule is stated thus in Willis', Thornton's Law of Oil & Gas, Vol. 3, sec. 1157: ''The owner or lessee of land may drill, develop and operate thereon for the realization of its mineral wealth, prosecuting his activities with due care and in good faith. But if the owner or controller of an oil or gas well negligently causes or permits the oil or gas, or salt water, to escape and to injure the land upon which the well is located to an extent not within the reasonable contemplation of the contract of lease; or the land of another adjoining or so situated as to sustain an injury the person injured thereby has a right of recovery of damages for the wrong.''

The court did not err in overruling appellant's motion for a directed verdict.

The case was practiced on the theory that the injury to appellee's land is temporary, and correctly so. There is no proof that the cause of the injury is not abatable by the expenditure of a relatively small amount of

money. Where the land is occupied by the owner, the measure of damages, such as those claimed in the present case, is the depreciation in the value of its use during the period sued for. Jefferson County v. Pohlman, 243 Ky. 556, 49 S. W. 2d 344; City of Harrodsburg v. Brewer, 243 Ky. 378, 48 S. W. 2d 817; Cherry Bros. v. Christian County, 146 Ky. 330, 142 S. W. 726; Ewing v. City of Louisville, 140 Ky. 726, 131 S. W. 1016, 31 L. R. A., N. S., 612; City of Georgetown v. Kelly, Ky., 123 S. W. 251. The rule is stated as follows in Price Bros. v. City of Dawson Springs, 190 Ky. 349, 227 S. W. 470, 472: "The rule regulating a recovery in this class of actions is that, where the injury complained of is permanent, and but one recovery can be had, the depreciation in the market value of the property is allowable, but if, as shown in these cases, the injury to the building is temporary and can be readily repaired, then the measure of damages is the depreciation in its rental value during the period sued for, if rented out, or, if occupied by the owner, the diminution in the value of the use of the property caused by the injury."

The plaintiff in the present case sought to recover for the loss of the use of the pond and for the value of the fish destroyed. There is no evidence as to the value of the use of the pond and no facts appear from which the value may be determined. The plaintiff was asked the following questions and made the following answers:

"Q. Where do you get water for your stock and for using for washing and things of that kind that you mentioned awhile ago? A. Well, the washing water and water for use around the house we get from the cistern, and in wet weather there is a branch on the hill and the stock gets water to drink out of that in wet weather."

Her other testimony on the subject was equally indefinite. The record is silent as to the number of livestock owned by the appellee and as to the inconvenience and expense occasioned by the loss of the use of the pond. Under the evidence and the court's instruction on the measure of damages, the determination by the jury of the amount of damages was left entirely to surmise and speculation. The only recovery warranted under the pleadings and proof was for nominal damages. There was some evidence that the pond

had been stocked with cat-fish and that a few fish had been caught from time to time, but there was no proof as to value and this item should have been omitted from the instruction on the measure of damages.

The judgment is reversed, with directions to grant appellant a new trial.