## BLUE DIAMOND COAL CO. v. PRESS EVERSOLE et al.

Court of Appeals of Kentucky.

Dec. 19, 1952.

Craft & Stanfill, Hazard, for appellant. William Melton, Hazard, for appellees.

MOREMEN, Justice.

This is an appeal from a judgment by which Blue Diamond Coal Company was enjoined from dumping slate and other débris upon the surface of land owned by appellees. The appellees were also awarded damages in the sum of $1,000 for injury to their property.

Appellant, Blue Diamond Coal Company, is the owner of the mineral rights underlying a boundary of about 485.6 acres of land. It claims title through an original deed of severance executed on July 20, 1884, which contains this recitation:

"For and in consideration of $225, the receipt whereof is hereby acknowledged, said parties of the first part do hereby sell and convey to the said party of the second part all of the coal, salt, water, oil and gas lying and being upon and under our farm, containing 500 acres, situated on the Kentucky River, being my land, and adjoining the lands of Ben Fugate and Adam Campbell, deed from Elijah Campbell and John Campbell, with the right of said T. P. Trigg Trustee, his heirs and assigns, of entry to mine said coal, salt, water, oil and gas, *with all the usual mining privileges,* reserving to ourselves the fee simple to the surface of said farm, and the right to mine coal thereon for our household use."

Appellant became the owner of the mineral rights and privileges with respect to the above land by virtue of mesne conveyances from the remote grantor who executed the deed of severance in 1884.

The appellees are the owners of the surface of a 48-acre tract which overlies a portion of appellant's mineral tract. The appellant operates a mine underlying appellees' tract and also has mining operations under the remainder of the area.

The appellees, in their suit for an injunction and damages, alleged that appellant was dumping slate and refuse from other operations onto appellees' surface, and the testimony introduced seemed to support appellees' contention that appellant was hauling slate and débris, in some instances, as far as from three to five miles; that the slate dump was approximately 250 feet in length and about 100 feet in width, was located near the dwelling house and barn of appellees, and the utility of that portion which it covered was permanently destroyed.

The chancellor held in effect that where there is one large leasehold of mineral rights, with the surface divided into small tracts, each independently held, the owner of the mineral rights may use only the surface overlying the mineral rights for dumping refuse that is taken from that portion which lies under the surface rights.

The appellant urges as grounds for reversal: (1) it was given the right to dump upon appellees' surface refuse from all the lands embraced within its leased boundary; (2) the court erred in admitting incompetent evidence; and (3) the damage awarded was excessive.

Appellant contends the clause "with all the usual mining privileges" must be construed in the light of the opinion in Jenkins v. Depoyster, 299 Ky. 500, 186 S.W.2d 14, 15, wherein it was held that the grantee of minerals in a tract of land by implication of law acquires the right to occupy and use so much of the surface as may be reasonably necessary for the beneficial and profitable working of the mine. However, this same opinion also pointed out:

"There is, of course, the correlative right of the owner of the surface to use and deal with his estate in any legitimate manner not inconsistent with the rights acquired by the owner of the minerals. The owners must have due regard for each other and should exercise that degree of care and use which a just consideration for the rights of the other demands. The measure is the ordinary and common convenience and use under like or similar conditions."

Pike-Floyd Coal Company v. Nunnery, 232 Ky. 805, 24 S.W.2d 614, involved facts where the coal company brought waste material from another leasehold on which it was operating and dumped it on the lands of appellee, and the court denied to the mining company the right to dump refuse from other mining operations not located on the leasehold.

The question therefore presented here concerns whether a mining company may take refuse from under all the various surface tracts which are independently held and dump it upon any one of the surface tracts within the large composite lease-

hold boundary owned by the mining company.

■ We believe the rule laid down in the Jenkins case, that the owner of the mining privileges and the owner of the surface privileges must have due regard for the rights of each other and should exercise the right which each has with a just consideration which the right of the other demands, is conclusive of our question.

■ The expression in the original deed of severance, that the grantee should enjoy the usual mining privileges, does not carry with it the privilege to single out and destroy the land of one of the several surface owners. Ordinary and common convenience requires that the waste by-products of mining should be distributed in a reasonable measure through the entire leasehold boundary, which was not done in this case.

■ Appellant next contends that incompetent evidence as to the amount of damages was admitted, and relies on Pike-Floyd Coal Company v. Nunnery, 232 Ky. 805, 24 S.W.2d 614, 616, where the general statement was made that "The proof should be confined to the value of the land actually occupied by the dump heap, and the damage to the residue of the tract by reason of the condition in which it is left, but the entire damage should not exceed the difference in the fair market value of the farm immediately before the dump heap was placed on it, and the fair market value immediately thereafter." In the case at bar the witnesses did not go into detail as to the formula they used in fixing the value of the land actually destroyed by the dump and thereafter fixed the damages to the residue, but the witnesses made it plain that the value of the land destroyed by the dump heap was considered and their estimate of the amount of damage was placed upon the difference between the market values of the tract before and after the dump was established. However, the damage done by the waste heap was not the only damage caused by the mining operation. Appellees complained of injuries resulting from several causes including the flooding of ground by water from the mine which destroyed pasture lands. The facts in this case are not identical with those in the Nunnery case. Here, other items required consideration before determining the amount of variances of the market value before and after the dump was created.

■ This court has held in numerous cases that the measure of damage for permanent injury to real estate is the difference between the market value before and after the injury. Reed v. Mercer County Fiscal Court, 220 Ky. 646, 295 S.W. 995, 54 A.L.R. 1275; Elizabethtown L. & B. S. R. Co. v. Price, 11 Ky.Law Rep. 367; Jefferson County v. Pohlman, 243 Ky. 556, 49 S.W.2d 344; B. & B. Oil Co. v. Townsend, 301 Ky. 667, 192 S.W.2d 953.

■ Appellant finally complains that the damages were excessive. Although the evidence as to the amount of damages was conflicting, we believe it was sufficient to support the chancellor's award.

Judgment affirmed.