**ILLINOIS BASIN OIL ASSOCIATION, Inc., Appellant,**

**v.**

**Bennie T. LYNN et al., Appellees.**

Court of Appeals of Kentucky.

March 15, 1968.

Robert G. Hunt, King, Deep, Branaman & Hunt, Henderson, for appellant.

William L. Sullivan, Dorsey & Sullivan, Henderson, for appellees.

DAVIS, Commissioner.

Bennie T. Lynn obtained a verdict and judgment for $4,000 against Illinois Basin Oil Association, Inc. (hereinafter IBOA) as compensation for alleged damages to the surface of a farm which Lynn had leased to IBOA for oil and gas exploitation. IBOA has appealed and presents the following assignments of error as bases for reversal:

(1) The only cause of action alleged in the complaint or proven was on a contract theory for restoration of the land, and there were no damages proved on this contract theory.

(2) The trial court erred in refusing to instruct on the principle of assumption of risk.

(3) The verdict and judgment were not supported by the evidence, in that there was no evidence to show any tangible monetary loss, and no cost of restoration was proven.

(4) The evidence of the plaintiffs was insufficient as a matter of law with respect to proof of causation or fact or "factum" of damage.

(5) The damages awarded were excessive.

(6) There was no proof of permanent damages in the case at bar, and the court erred in submitting such an instruction to the jury.

(7) The trial court erred in refusing to instruct on the principle of proximate cause.

(8) The trial court erred in refusing to send the jury out to visit the property in question where the operations of the defendant had been carried on.

(9) The trial court improperly admitted photographs in evidence over timely objection.

(10) The trial court erred in refusing to instruct the jury on principle of mitigation of damages.

(11) Instruction No. 2 under which the jury found was erroneous in allowing a recovery without proof of negligence.

(12) The trial court erred in allowing in evidence over objection the bare conclusion of plaintiff, Bennie Lynn, that the expense of restoration would exceed the difference in fair market value of the property.

The oil and gas lease from Lynn to IBOA was executed in June 1962, and drilling on the land began on November 20, 1962. Twenty-five separate wells were drilled; twenty-three of them were productive. The weather was suitable for drilling and use of the surface by heavy equipment until about the middle of December when a rainy season occurred. There was testimony from a witness trained in oil and gas production to the effect that it was imprudent and abnormal to undertake drilling after the rainy season began. The appellant presented evidence from an expert to the contrary. It was further shown for the appellant that the off-season drilling was considered imperative to protect the oil deposit by offset wells. The appellees and the president of IBOA had some discussion concerning the necessity for winter drilling. This discussion culminated in a letter dated January 15, 1963, from IBOA to appellees containing in part the following language:

"This is to reduce to writing our agreement wherein we will reshape the roads as needed and attempt to provide reasonable drainage, slope ditches (if any) to provide reasonable farm machinery crossing areas and will level, disc, and reseed with a like kind of seed in the field any disturbed areas other than reasonable roadway and work spaces."

For the appellees it was testified that IBOA moved much heavy equipment during unfavorable weather conditions over the fields of the farm in such a manner as to substantially disturb the topsoil and the fescue growing on the land. According

to appellees' version, there was unnecessary and unusual traffic of heavy equipment over open fields in adverse weather conditions. Appellees' evidence tended to show that appellant's activities with drilling rigs and other heavy equipment tore up and left deep ruts affecting sixty to seventy-five acres of the 135 acres in the tract where drilling was accomplished. Additionally, it was said for appellees that the surface terrain has been left so scarred that it can scarcely be traversed on a tractor, and water stands in many ruts and swags caused by IBOA's operations. There was further evidence that fences and gates had been removed and that the ground had been left cluttered with partially buried pieces of cable, timber, and pipe.

The evidence for the appellant tended to refute the dismal picture presented in behalf of the appellees and would have warranted the jury's finding of prudent operation by the lessee. Unfortunately for the appellant, the jury was persuaded by the evidence in behalf of the appellees.

In Summers, The Law of Oil and Gas, Section 652, the legal relations between the lessor and lessee respecting the use of the surface of the land are fully discussed. The cited section announces at the outset:

> "An oil and gas lease carries with it the right to possession of the surface to the extent reasonably necessary to enable the lessee to perform the obligations imposed upon him by the lease." 4 Summers, The Law of Oil and Gas, Section 652, Page 2.

The same authority, in the same section of the work, points out:

> "Drilling operations may be carried on anywhere on the land, in the absence of express provisions of the lease to the contrary, and if not negligently performed, they do not constitute a nuisance. A subsequent purchaser or lessee of all or a portion of the land may not, therefore, enjoin drilling or production operations because they annoy and decrease

the value of his interests. A lessor or his subsequent purchaser may, however, recover damages caused by the oil and gas lessee's negligence in operating the land." Id. Section 652, Pages 11 and 12.

This court has approved the tenets just mentioned and has recognized that the rights of the lessee and lessor are correlative. See Lindsey v. Wilson, Ky., 332 S.W. 2d 641. The January 15 letter from IBOA to appellee Lynn suggests that the parties were cognizant of the abnormal destructive effect to be anticipated by the winter drilling. As noted in the letter, the company specifically undertook to remedy any injury occasioned by the winter drilling. Indeed, the prime defense offered by IBOA was that it had remedied all damage flowing from its winter drilling operation. The appellees conceded that IBOA had undertaken remedial measures but contended that the measures were inadequate and ineffective. Evidence in support of each side of this issue was heard, and the jury resolved it in favor of the appellees.

■ Appellant asserts that the only cause of action alleged or proven was founded upon a contract and that there was no proof of damage under such a theory. We agree that the cause of action sounds in contract, but the extent of breach, if any, is measured by the negligence of the lessee. As pointed out in the authorities cited above, the lessee has a contractual right to use the surface to the extent reasonably necessary but becomes liable if its actions are performed negligently. It is our view that there is no merit in the contention advanced that no damage was proven on the contract theory.

■ It is next contended that the trial court should have instructed on the principle of assumed risk. We are unable to accept such contention. It seems plain that the appellees specifically declined to assume any risk when insistence was had for the assurances made in the letter of January 15. To the contrary, it appears that IBOA as-

sumed the danger of incurring liability by winter drilling and gave written assurance that it would rectify any damage done.

■ The appellant attacks the verdict as being unsupported by evidence, because there was no showing of any tangible monetary loss and the cost of restoration was not proven in detail. Cited in support of this contention are Adams Construction Company v. Bentley, Ky., 335 S.W.2d 912; Wiser Oil Company v. Conley, Ky., 380 S.W.2d 217; Fields v. Rutledge, Ky., 284 S.W.2d 659, 58 A.L.R.2d 210; and Kentucky Stone Company v. Gaddie, Ky., 396 S.W.2d 337. It was the contention and testimony of appellee that the damage to the surface of his farm was of a permanent nature. He testified that the market value of the surface had been reduced by as much as $10,000 as the result of the claimed abuse of of the surface by IBOA in its operation. The appellee also testified that the cost of restoration would, in his judgment, be greater than the diminution in the market value. In other words, the net effect of the evidence in behalf of appellees was that the cost of restoration would be greater than $10,000. The appellee did not undertake to detail the itemized costs of restoration but did demonstrate his own experience and acquaintance with farm work and development of real estate. In addition to this, there was detailed evidence presented by IBOA reflecting expenditure in excess of $2,000 in an effort to restore the surface. In these circumstances, we believe there was a sufficient evidentiary background to support the jury's finding that $4,000 would be required in reasonable efforts for restoration of the surface. We find nothing in the authorities cited by IBOA which would militate against this conclusion.

What has just been said substantially disposes of the fourth ground for reversal advanced by the appellant. It is our view that the evidence in behalf of appellees was sufficient with respect to proof of causation and the fact of damage.

■ Complaint is made that the damages awarded were excessive. We believe the evidence presented in behalf of the appellees was of sufficient probative value to sustain the verdict of $4,000. As noted, the appellee, Bennie Lynn, testified that the cost of restoration would exceed $10,000 and gave some background basis for his opinion. In these circumstances, we are unable to say that the damages were excessive.

■ The appellant asserts that since there was no proof of permanent damage to the real estate it was error for the trial court to submit an instruction embracing that theory of recovery. Reliance is placed upon Kentucky Stone Company v. Gaddie, Ky., 396 S.W.2d 337, and Wiser Oil Company v. Conley, Ky., 380 S.W.2d 217. It will be observed that in the Gaddie case it was impossible to determine whether the jury had found its verdict upon the basis of reduction in market value by a permanent injury or whether it based its finding upon a cost of repair. In the present case, the trial court followed the Gaddie case and instructed the jury separately as relates to the measure of damages for permanent injury vis-à-vis damages for temporary injury. The jury's verdict specifically recited that it was returned under the instruction pertaining to temporary injury. Assuming without deciding that it was error to instruct on a theory of permanent damage, we are persuaded that such error, if any, was not prejudicial since the jury made no finding under it anyway. CR 61.01. We do not subscribe to the argument advanced by IBOA that the jury was persuaded by the permanent damage instruction that the trial judge had placed his imprimatur upon the permanent damage theory. In Wiser Oil Company v. Conley, supra, we found error in the court's permitting recovery for permanent damage when none was shown, but there the jury made its verdict for permanent damage.

■ Appellant complains that the jury was not instructed on the principle of proximate cause. This assignment of error

is directed at Instruction No. 2 which informed the jury that if it believed from the evidence that IBOA " * * * negligently conducted its oil and gas operations on the land of plaintiffs or used more of plaintiffs' land than was reasonably necessary to conduct such oil operations, and that by reason of either or both of such actions of defendant, if any, the land of plaintiffs was damaged, you should find your verdict for plaintiffs; but unless you so believe, you should find your verdict for the defendant." Better form would dictate that the jury should have been instructed to award damages which it believed had been sustained by the appellees that were proximately caused by the negligent or unreasonable activities of IBOA. However, we are unable to imagine that the jury could have failed to realize the impact of the instruction, and we believe that the use of the expression " * * * that by reason of either or both of such actions of the defendant, if any, the land of plaintiffs was damaged, * * * " was sufficient to embrace the principle of proximate cause.

■■ Although both sides moved for a jury view of the premises, the trial judge denied the motions. IBOA assigns this as reversible error, relying again upon Kentucky Stone Company v. Gaddie, Ky., 396 S.W.2d 337. It was recognized in Gaddie that the matter of permitting a jury view in cases of this type rests within a sound judicial discretion of the trial court. In the present case the trial court apparently declined to permit the jury to view the premises because of practical considerations. The record reflects that sixty to seventy-five acres of land were said to be affected, and the nature of the claimed damage was not such that it could be physically examined by the jury in any practicable manner. In light of these circumstances, we are not willing to say that the trial judge abused his discretion in refusing a view of the premises.

■ A related charge of error is that the court improperly admitted five small photographs depicting the sites of some of the wells drilled on the premises. Our examination of these pictures convinces us that the court properly admitted them into evidence on the showing that they fairly depicted the scenes which they purported to represent. There was nothing about them which could in any manner be regarded as prejudicial, and it seems to us that they were pertinent to the issues on trial.

■ IBOA offered an instruction incorporating the thought that the appellees were required to mitigate their damages. We have no quarrel with the abstract principle of law as respects the duty to mitigate damages in proper circumstances, but we fail to see any basis for such an instruction in the case at bar. The alleged damages occurred during the active operations being carried on by IBOA and in circumstances which foreclosed the possibility of the appellees' taking any steps looking toward mitigation. It is apparent that the conversations leading up to the letter of January 15, 1963, reflect an attitude by the appellees to do what they could to protect themselves and minimize their damages. We believe the trial court properly rejected the proffered instruction.

■ The appellant attacks Instruction No. 2 on the basis that it authorized recovery without proof of negligence. IBOA cites B & B Oil Company v. Townsend, 301 Ky. 667, 192 S.W.2d 953, for the proposition that an oil operator, under a valid lease, is liable for damages caused by the operator's lack of due care; in short, negligence. The appellant contends that it would have been impossible for IBOA to use more of appellees' land than was reasonably necessary to conduct the oil operations, absent negligence on the part of the company. Hence, it is reasoned by IBOA that the instruction complained of was erroneous in predicating possible liability upon negligence *or* use of more land than was reasonably necessary. We think this argument begs the question at hand. We can agree with IBOA that negligence is the predicate

of liability—use of more land than was reasonably necessary to conduct the operations amounts to negligence. In final analysis the jury was required to find lack of proper care as a condition precedent to imposing liability. We think this was sufficient and appropriate.

 The final assault upon the judgment is based upon asserted error in permitting the "bare conclusion" of the appellee, Bennie Lynn, that the expense of restoration would exceed the difference in fair market value of the property. The difficulty we have with this argument is that we cannot say that Lynn's evidence was a "bare conclusion." As heretofore observed, Lynn evinced expertise in land values and land maintenance. He gave sufficient evidence of his own qualifications as to warrant his opinion and so as to remove that opinion from the realm of "bare conclusion."

The judgment is affirmed.

All concur.