**KENTUCKY BORDER COAL COMPANY, INC., Appellant,**

**v.**

**Grace MULLINS et al., Appellees.**

Court of Appeals of Kentucky.

Dec. 7, 1973.

Rehearing Denied Feb. 15, 1974.

W. A. Johnson, Johnson & Johnson, Paintsville, for appellant.

John W. Kirk, Hazelrigg, Knight & Kirk, Inez, for appellees.

VANCE, Commissioner.

This is an appeal from a judgment entered pursuant to a jury verdict which awarded appellees the sum of $250.00 for damages to timber on their lands, 5¢ per ton "wheelage" for coal hauled across their land from adjoining lands and punitive damages in the sum of $75,000.00.

The grounds for appeal are: (1) The appellant was entitled to a directed verdict because no compensable damages were proven, (2) the instructions were erroneous and (3) the award for punitive damages was grossly excessive.

Appellees were the owners of the surface of approximately thirty acres in Martin County. Appellant owned the mineral rights underneath the surface by virtue of a deed dated March 3, 1934, to its predecessors in title which contained the following language:

"It is the intention of this deed to convey to second parties all oil and oil products; all gas and gas products and all coal and coal minerals products underlying the above described tract of land and their regular rights.

"First parties expressly reserve for themselves the surface to the above tract and enough cal [sic] for the personal use of himself or his assigns."

Appellant contracted with a firm known as Mountain Strippers, Inc., for the actual removal of the coal and Mountain Strippers engaged one Sherrill Morse to haul the coal from the land to a tipple belonging to appellant.

Without notice to or the consent of the appellees a roadway was constructed onto appellees' property and the coal was strip mined. The actual surface area from which the coal was stripped was about two acres near the top of a mountain. Additional surface area was used for the construction of a road across appellees' land. There was evidence that the stripping operation caused rocks, boulders, and other debris to be cast over a substantial portion of the remainder of the surface of the land. Some timber was destroyed in this operation and the roadway constructed upon appellees' land was used by Morse to haul coal mined from adjoining lands to appellant's tipple. No consent for this use was obtained from appellees and no tonnage or "wheelage" royalty was paid to them.

An argument is made that the strip mining, the construction of the road and the hauling of the coal were done by independent contractors and that appellant has no liability for the acts of these independent contractors. Appellees attempted to prove that the alleged independent contractors were not independent but were controlled by the appellant. Be that as it may, the parties stipulated that appellant mined the coal, disturbed the surface of the land, constructed the roadway and hauled the coal or caused it to be hauled over appellee's land. The parties are bound by the stipulation.

We find no merit in the contention that appellant was entitled to a directed verdict. Nothing contained in the mineral

grant authorized appellant to transport coal mined on other land across the property of appellees. The evidence clearly established that this occurred. This trespass constituted a temporary damage to real property for which appellees were entitled to compensation. Texaco, Inc. v. Melton, Ky., 463 S.W.2d 301 (1971).

At the conclusion of the evidence the court conferred with counsel concerning instructions to be given. Counsel for appellant requested that the record show that he reserved the right to file objections to the court's instructions after the close of the case. The court then remarked as follows:

"Let it be shown that both plaintiff and defendant reserve all rights to object, except, and move the Court for such motions as they desire to do so, when they receive their copies of the instructions."

The court then instructed the jury and eleven days later the attorney for appellant filed written objections to the instructions.

CR 51(3) provides:

"No party may assign as error the giving or the failure to give an instruction unless he has fairly and adequately presented his position by an offered instruction or by motion, or unless he makes objection before the court instructs the jury, stating specifically the matter to which he objects and the ground or grounds of his objection."

We do not find in the record that appellant offered any instruction which fairly and adequately presented his position as expressed in his brief and he did not make any objection to the instructions prior to the time that the court instructed the jury.

■ We hold that the alleged errors in the instructions have not been preserved for review. Even though the trial judge apparently agreed that the parties could file objections to the instructions after the close of the case, he had no authority to do

so. Sparks v. Doe, Ky., 379 S.W.2d 252 (1964).

The purpose of the rule is to require the parties to advance their objections to instructions before the case is submitted to the jury, not afterward, and to screen out errors at the trial rather than the appellate level. The intended effect of the rule is too important to allow it to be obviated by agreement of the parties or by consent of the trial court.

In 7 Clay Kentucky Practice 2d Edition Annotated, the following comment on Rule 51 is found:

"The purpose of the instructions is to present fairly to the jury the legal issues involved. Unless there may be attributed to every trial judge an omniscience which but few possess, it is necessary to impose on the attorney the responsibility of assisting the judge in making this fair and proper presentation. The procedure necessarily demands of the lawyer adequate preparation prior to the time the case is ready for submission to the jury. He should not be permitted on appeal to claim an abortive trial to which he has materially contributed by failure, as a result of inadequate preparation, to assist the trial judge past the pitfall of error."

The final contention of the appellant is that the award of $75,000.00 punitive damages is grossly excessive at first blush. We think the point well taken.

■■ An award of exemplary damages is subject to supervision and revision by the court to the same extent as an award of compensatory damages and if the reviewing court determines the discretion of the judge or jury indicates passion or prejudice the award is subject to reversal. Bisset v. Goss, Ky., 481 S.W.2d 71 (1972), 22 Am.Jur.2d, Damages, Sections 263 and 264. The evidence of wilfullness and maliciousness in this case was extremely weak and a verdict of $75,000.00 damages based upon such evidence strikes the court at first blush as so excessive as to indicate it

was rendered as the result of passion or prejudice and should be set aside. Cf. Commonwealth, Department of Highways v. Friend, Ky., 500 S.W.2d 405 (Decided October 12, 1973).

The jury verdict fixed damages at 5¢ per ton for coal hauled across appellees' lands. The trial judge computed the damage at $4,547.18 for all coal hauled across the land. The evidence shows however that 17,471.05 tons of the coal were mined upon appellees' land and appellees were not entitled to any damage for transporting coal mined upon their own lands. The judgment in that respect should be reduced by the amount of $873.55 and when so amended the judgment as to the damage for cutting of timber and for hauling coal across the appellees' land is affirmed. The judgment awarding punitive damages is reversed and the case is remanded for a new trial on the question of punitive damages.

PALMORE, C. J., and MILLIKEN, OSBORNE, STEINFELD and STEPHENSON, JJ., concur.

REED, J., concurs in the result only.